# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# BIG STONE GAP DIVISION

| | | |
|---|---|---|
| **DANIEL ARNETTE,** | ) | |
| Plaintiff, | ) ) | Case No. 2:04CV00038 |
| v. | ) ) ) | **OPINION** |
| **JO ANNE B. BARNHART,** | ) | By: James P. Jones |
| **COMMISSIONER OF SOCIAL** | ) | Chief United States District Judge |
| **SECURITY,** | ) ) ) | |
| Defendant. | ) | |

In this social security case, I affirm the final decision of the Commissioner.

## *I. Background.*

Daniel Ray Arnette filed this action challenging the final decision of the Commissioner of Social Security ("Commissioner") denying the plaintiff's claim for child's insurance benefits ("CIB")[1] and supplemental security income ("SSI") benefits under titles II and XVI of the Social Security Act, 42 U.S.C.A. §§ 1381-1383f, (West 2003 & Supp. 2005) ("Act"). Jurisdiction of this court exists pursuant to 42 U.S.C.A. § 405(g) (West 2003 & Supp. 2005).

---

[1] The ALJ determined that the plaintiff was not disabled at any time during his minority (R. at 22), and Arnette does not challenge that determination.

My review is limited to a determination as to whether there is substantial evidence to support the Commissioner's final decision. If substantial evidence exists, this court's "inquiry must terminate," and the final decision of the Commissioner must be affirmed. *Laws v. Celebrezze,* 368 F.2d 640, 642 (4th Cir. 1966). Substantial evidence has been defined as "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Id.*

Arnette applied for benefits on April 23, 1996, alleging disability since August 1, 1990. The claim was initially denied, and was denied again on reconsideration. Arnette requested review, and received a hearing before an administrative law judge ("ALJ") on May 1, 1998. By decision dated July 30, 1998, the ALJ found that the plaintiff was not disabled within the meaning of the Act. The Social Security Administration's Appeals Council denied review on March 8, 2004, and the ALJ's opinion now constitutes the final decision of the Commissioner.[2]

The parties have briefed the issues, and the case is now ripe for decision.

---

[2] The extraordinary delay of over five years for the Appeals Council's decision is not explained in the record.

## II. Facts.

Arnette is now thirty-four years old. (*See* R. at 48.) He completed the twelfth grade and earned a welding certificate from his high school. (R. at 19.) Arnette last worked planting trees and carrying mulch to help reclaim a strip mine. (*Id*.) He alleges disability due to injuries sustained in an automobile accident in 1991 or 1992. (*Id*.)

Based upon the evidence, the ALJ determined that the plaintiff is unable to return to past relevant work, but has the residual functional capacity to perform a limited range of unskilled light work activity with a sit/stand option, as defined in the regulations. Based upon the testimony of a vocational expert ("VE"), the ALJ found that there existed a significant number of jobs in the national economy which the plaintiff could perform.

## III. Analysis.

Arnette argues that the ALJ's determination is not supported by substantial evidence. Specifically, he contends that the ALJ erred by failing to find that his impairments meet and or medically equal a listed impairment. In a related argument, Arnette suggests that the ALJ failed to properly analyze whether his impairments

meet and or medically equal a listed impairment. Finally, Arnette argues that the ALJ erred by failing to discuss a portion of the VE's testimony.

*A.*

First, Arnette argues that the ALJ's determination that the plaintiff does not meet or medically equal the criteria of Listing of Impairments ("LOI") 1.03B, 20 C.F.R. part 404, subpart P, appendix 1 (2001), was flawed both because the ALJ failed to conduct a proper LOI analysis and because the ALJ reached the wrong outcome.

"[A]n ALJ must fully analyze whether a claimant's impairment meets or equals a 'Listing' where there is factual support that a listing could be met." *Huntington v. Apfel*, 101 F. Supp. 2d 384, 390 (D. Md. 2000) (citing *Cook v. Heckler*, 783 F.2d 1168, 1172 (4th Cir. 1986)). The ALJ's analysis must compare "the symptoms, signs, and laboratory findings concerning the impairment . . . with the corresponding criteria set forth in the relevant listing." *Id*. at 390-91 (citing 20 C.F.R. §§ 404.1526(a), 416.926(a); *Cook*, 783 F.2d at 1172). In order to meet a LOI, a claimant must fulfill each and every element of the listing. *Id*. at 391 (citing *Sullivan v. Zebley*, 493 U.S. 521, 531 (1990)).

LOI § 1.03 relates to arthritis of a major weight-bearing joint. At the time the ALJ decided Arnette's claim, § 1.03A and 1.03B required the following showing:

-4-

> With history of persistent joint pain and stiffness with signs of marked limitation of motion or abnormal motion of the affected joint on current physical examination. With:
> A. Gross anatomical deformity of hip or knee (e.g. subluxation, contracture, bony or fibrous ankylosis, instability) supported by X-ray evidence of either significant joint space narrowing or significant bony destruction and markedly limiting ability to walk and stand; or
> B. Reconstructive surgery or surgical arthrodesis of a major weight-bearing joint and return to full weight-bearing status did not occur, or is not expected to occur, within 12 months of onset.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.03 (2001). Effective February 19, 2002, LOI § 1.03 was amended. Revised Medical Criteria for Determination of Disability, Musculoskeletal System and Related Criteria, 66 Fed. Reg. 58,010-01 (Nov. 19, 2001). The new version of the listing requires claimants to show "[r]econstructive surgery or surgical arthrodesis of a major weight-bearing joint, with inability to ambulate effectively, as defined in 1.00B2b, and return to effective ambulation did not occur, or is not expected to occur, within 12 months of onset." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.03 (2005). The effect of this change was to consolidate listings 1.03A and 1.04 into one listing "because both listings describe gross anatomical deformities." 66 Fed. Reg. 58,010-01. Listing 1.03B was retained as a separate listing as 1.03. *Id.*

The new regulation went into effect while the plaintiff was awaiting the Appeals Council's decision, therefore the ALJ's opinion had not yet become the final

decision of the Commissioner. *See Wilkins v. Sec'y, Dept. of Health & Human Servs.*, 953 F.2d 93, 96 (4th Cir. 1991) (en banc). The regulation itself explains that "we will apply these final rules to the claims of applicants for benefits that are pending at any stage of our administrative review process. . . ." 66 Fed. Reg. 58,010-01. Accordingly, the Commissioner's decision was issued under the new version of § 1.03, and not the version that contained § 1.03B.

The parties do not mention this issue and appear to advance their arguments under the old LOI. In accordance with the Commissioner's statement about the applicability of the new rule, I will determine whether the ALJ's decision still is supported by substantial evidence when the new LOI is applied.

Arnette argues that his testimony, the statement of his attorney, and medical records from Holston Valley Hospital, Norton Community Hospital, and Drs. Kotay, Williams, and Cox were sufficient to trigger the ALJ's duty to conduct a more in-depth analysis of this issue. (Pl.'s Br. at 7-8, 13.) Arnette's own testimony did not require the ALJ to compare the medical evidence with the criteria of § 1.03. The ALJ found that "[t]he plaintiff's subjective complaints are disproportionate to the medical evidence and are not fully credible." (R. at 20, 22.) It is the duty of the ALJ, not this court, to make credibility determinations. *See Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Similarly, the statement of Arnette's attorney did not trigger the

Case 2:04-cv-00038-JPJ-PMS   Document 16   Filed 08/29/05   Page 6 of 10   Pageid#: 70

ALJ's duty to conduct a more in-depth analysis. The disability determination is ultimately one for the Commissioner, not the claimant's advocate. These arguments are not persuasive under the old or new LOIs.

The medical records cited by Arnette simply did not suggest that Arnette's impairments met or equaled old LOI § 1.03B. Although those records demonstrated that Arnette had undergone extensive treatment for his leg, ankle, foot, and hand injuries, none indicated that Arnette showed a marked limitation of motion or abnormal motion. Dr. Donald R. Williams opined that Arnette is limited in his ability to push/pull in the lower extremities, and that he will never be able to climb ladders and can only occasionally climb stairs. (Pl.'s Br. at 9 (citing R. at 217A-H, 221-28).) Similarly, Dr. Jack K. Cox noted that the plaintiff used a cane when walking and had a decreased range of motion in the right ankle. (*Id.* (citing R. at 218-19).) These opinions suggested some limitation in Arnette's range of motion but did not indicate the kind of marked limitation required by § 1.03B.

A "marked limitation of motion" is not one of the criteria under new LOI § 1.03. However, § 1.03 does require a claimant to show an "inability to ambulate effectively."[3] 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.03. Section 1.00B2b defines

---

[3] The Commissioner replaced the old § 1.03B criterion for failure to return to "full weight-bearing status" with the criterion for "inability to ambulate effectively." 66 Fed. Reg. 58,010-01. This change reflects "advances in surgical techniques and post-surgical

-7-

that phrase as "an extreme limitation of the ability to walk," and focuses on how the individual is functioning. § 1.00B2b(1)-(2); 66 Fed. Reg. 58,010-01. For example, the regulation examines whether a claimant can walk without using both hands to hold assistive devices, walk at least a block at a reasonable pace, climb a few steps with the use of a single hand rail, or use standard public transportation. § 1.00B2b(1)-(2).

In this case, the ALJ's decision is still supported by substantial evidence even when the new LOI § 1.03 is applied. The evidence does not warrant a conclusion that Arnette's impairments create an extreme limitation of the ability to walk. Dr. Williams opined that Arnette can walk or stand at least two hours in an eight hour workday, and can occasionally climb stairs. (R. at 222-23.) Dr. Cox noted, and Arnette testified, that he uses only a single cane or crutch to walk. (R. at 218-19, 251.) This evidence tracks the regulations' description of an "[]ability to ambulate effectively," showing at each step that Arnette's impairments fail to meet or medically equal the listing. There is no factual support that Arnette could meet either the old LOI § 1.03B or the new LOI § 1.03. Therefore, the ALJ was not required to compare the medical evidence of record to the criteria of the listings, and his determination

---

treatment" that allow "some individuals who are not able to bear full weight on a lower extremity [to] nevertheless have sufficient ability to ambulate to be able to work." *Id*.

-8-

that the plaintiff failed to meet or equal any listing is supported by substantial evidence.

## B.

Second, Arnette argues that the ALJ erred by failing to discuss part of the VE's testimony. In particular, Arnette contends that the ALJ improperly ignored "that portion of the VE testimony which stated 'no jobs.'" (Pl.'s Br. at 14.)

The VE made the statement at issue in response to a hypothetical question from the ALJ.

> ALJ: [A]ssume that I find our claimant's testimony to be credible and reliable[. In] what category, if any would this place the hypothetical claimant? And if it does place him in a category would there be jobs in the regional or national economy that fall in this category?
>
> VE: It would not place him in any category.
>
> ALJ: You're telling me it would eliminate all jobs?
>
> VE: Yes, sir.

(R. at 267-68.) As previously explained, the ALJ explicitly found Arnette's testimony not to be credible. (R. at 20, 22.) Therefore, this testimony from the VE does not, as Arnette contends, constitute "evidence that 'suggests an opposite conclusion.'" (Pl.'s Br. at 14 (citing *Sales v. Chater*, 950 F. Supp. 316, 319 (D.N.M. 1996).)

The ALJ posed proper hypothetical questions to the VE, which were consistent with the record, and the ALJ properly relied upon the VE's opinion that Arnette could perform light exertional jobs which take into account his functional limitations. Accordingly, I find that the ALJ's determination is supported by substantial evidence.

## IV. Conclusion.

For the foregoing reasons, the Commissioner's motion for summary judgment will be granted.

An appropriate final judgment will be entered.

DATED: August 29, 2005

/s/ JAMES P. JONES
Chief United States District Judge